**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**James C. GRAYE, d/b/a J. C. Graye Co., Defendant.**

United States District Court
S. D. New York.
Nov. 14, 1957.

Paul Windels, Jr., Regional Administrator, Michael F. Parrino, New York City, for plaintiff.

Sidney B. Josephson, New York City, for defendant.

IRVING R. KAUFMAN, District Judge.

By this motion the Securities and Exchange Commission seeks a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, 28 U.S.C.A. to restrain defendant from future violations of § 15(c) (3) of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78o (c) (3) and of Rule 240.15 c 3–1 (17 C.F.R. § 240.15 c 3–1) of the Securities and Exchange Commission (hereinafter referred to as S.E.C.). Defendant, James C. Graye, doing business as James C. Graye Co., is a broker-dealer regis-

tered with the S.E.C. pursuant to § 15 of the Securities Exchange Act. Rule 240.-15 c 3–1 provides that "No broker or dealer shall permit his aggregate indebtedness to all other persons to exceed 2,000 per cent of his net capital." It then establishes accounting procedures to determine what constitutes compliance. It is the contention of the S.E.C. that a trial balance taken from defendant's books and records reveals that on October 18, 1957 there existed a capital deficiency of $9,066.71, which was arrived at according to the procedure laid down in Rule 240.15 c 3–1, and represents the sum needed by defendant in order to be in compliance with the above rule. Defendant, on the other hand, points to the fact that on November 1, 1957, after the service upon him of the order to show cause, he deposited $12,000, in his capital account thus bringing himself into conformity with the Commission rules and rendering this motion moot. It is the plaintiff's position that notwithstanding defendant's subsequent compliance, it is still entitled to the requested injunction.

■■ The provisions of the Securities Exchange Act were not intended to be punitive in nature, but rather were designed to prevent certain practices which might prove detrimental to the public interest. The S.E.C., in short, became the guardian of the public in security transactions. Thus, the Act seeks, in the instant case, not retribution against the offender, but rather a cessation of acts which Congress has deemed injurious to the public welfare. Therefore, it has frequently been held that a subsequent compliance will not cure past violations where there is a likelihood of a repetition of those violations in the future. Securities and Exchange Commission v. Okin, 2 Cir., 1943, 139 F.2d 87; Securities and Exchange Commission v. Torr, 2 Cir., 1937, 87 F.2d 446, 449; Securities and Exchange Commission v. Lawson, D.C.Md.1938, 24 F.Supp. 360. Protection of the public being the moving consideration behind the enactment of this remedial legislation, the mala-fides or bona-fides of defendant are im-

material except insofar as they bear on the probability of his repeating the proscribed acts. Securities and Exchange Commission v. Lawson, supra. Where a defendant has been recreant more than once in the past, or where, though not denying his lack of compliance, he proclaims the propriety of the acts he has performed, while condemning the rules that forbid those acts, Securities and Exchange Commission v. Otis & Co., D.C. Ohio, 1936, 18 F.Supp. 100, affirmed Otis & Co. v. Securities & Exchange Commission, 6 Cir., 1939, 106 F.2d 579, the likelihood of recurrent violations is apparent.

■ Such is the situation in the instant case. In its affidavit the S.E.C. alleges that trial balances have revealed violations, not only on the 18th day of October, 1957, but also on November 30, 1956, March 18, 1957 and October 8, 1957. On each occasion, defendant promised to bring himself into compliance, but each subsequent trial balance again disclosed a capital deficiency. Taken at face value, these allegations of recurring violations would impel an inference that they will be repeated in the future. Unless they are rebutted by defendant, I would be inclined to exercise my discretion and grant the injunction. Defendant in his affidavit makes no denial of these allegations but rather attempts to meet them by contending: (1) that Judge Sugarman's denial of a similar motion by the S.E.C. against this same defendant on April 29, 1957 (Civ. No. 118–391) is binding on the court in the present motion; (2) that the accounting techniques of the S.E.C. are not in accord with standard accounting practices and are, therefore, improper; and (3) that whether or not defendant is in compliance is not within his control, since a market fluctuation may so vary the value of his assets that he could be thrown out of compliance through no fault of his own.

Even assuming arguendo the factual allegations upon which defendant's arguments are based, he has shown no reason why this injunction should not issue.

■ As to defendant's first contention, Judge Sugarman's denial of a similar motion is not binding on this court. At that time, the S.E.C. alleged only one previous violation. Therefore, while Judge Sugarman might not have found sufficient reason to compel him to grant an injunction in April, this court, in the light of two violations subsequent to that date, would have sufficient ground to believe that defendant has by this time amply demonstrated his intention not to remain in compliance.

■ As to defendant's second contention, the Securities Exchange Act specifically provides that the S.E.C. may prescribe rules which it feels are "necessary or appropriate in the public interest or for the protection of investors to provide safeguards with respect to the financial responsibility of brokers and dealers." (15 U.S.C.A. § 78o (c) (3). Rule 240.15 c 3–1 was prescribed pursuant to this statutory authorization. Unless it is shown (and that is not the case here) that this rule is clearly an abuse of the Commission's rulemaking power, it is not incumbent upon this court to look behind the rule and determine how it might have been drafted more in accordance with the court's concepts of good accounting procedure. R. J. Koeppe & Co. v. Securities and Exchange Commission, 7 Cir., 1938, 95 F.2d 550, 553. A mere allegation that the rule does not accord with ordinary accounting procedures is not the proper way to challenge this rule, long since tried. So long as the accounting procedure followed in the instant case is in conformity with the provisions of the rule it must be deemed proper; that it is in such conformity is nowhere denied by the defendant.[1] In effect, what defend-

---

1. For example, defendant in his affidavit complains of certain accounting procedures employed by the S.E.C. which disregard "all fixed assets .and assets which cannot readily be converted into cash such as prepaid rent, insurance, unsecured loans, customers' accounts and rent deposits" and which deduct "30%

ant is arguing for is the right of each broker-dealer to make rules more to his liking. The efficacy of the rule of the S.E.C. depends on a standard accounting procedure established and used by the Commission and known to all who are required to be in compliance.[2]

■ Defendant's third argument likewise asks the court to question the wisdom which motivated the enactment of the Securities Exchange Act. It argues that defendant is right because the law is wrong. Whether such a law is desirable is a determination for Congress to make. It made that determination. In the absence of a violation of a constitutional right we may not re-examine Congressional wisdom.

■ I fail to see any injury resulting to defendant by the granting of this injunction. As was stated in Securities and Exchange Commission v. Otis, D.C. Ohio, 1936, 18 F.Supp. 100, 101, affirmed Otis v. Securities and Exchange Commission, 6 Cir., 1939, 106 F.2d 579; "If in fact defendant has no intention of again offending, it will not be injured by an injunction." The injunction does not seek to put defendant out of business. It seeks only to restrain him from doing business while he is in violation of the S.E.C. rules. It does not seek to harm defendant, but rather to protect the public. Compliance will mean continuation.[3]

In the light of the foregoing, the S.E.C. has shown ample reason why a preliminary injunction should issue.

Motion granted. Settle order.

from the market value of securities owned by the broker." But these accounting procedures are all specifically authorized by subparagraph (2) of paragraph (c) of Rule 240.15 c 3–1 of the S.E.C. The defendant's affidavit further states that: "The statement of my accountant * * * is annexed hereto showing that the calculations of the Commission's investigator are incorrect." Without examining the details of that statement, it is sufficient to note that it is dated as of the "close" of November 1, 1957, and, therefore, does not rebut the S.E.C.'s statement which was taken on October 18, 1957.

2. There is another aspect to this argument. In upholding the propriety of his actions, while not denying that they are violative of the Commission's rules, defendant exhibits a state of mind which leads to the inference that his past failures are likely to be repeated. His is not the stand of one who, having come inadvertently into conflict with the rule, is now contrite and intends in the future to toe the line. His position in effect is that he does not like the rule and that he should not be bound by it.

3. In his affidavit, defendant's attorney by way of a concluding remark requests that a hearing be held to afford him an opportunity "to cross-examine the witnesses of the plaintiff and to present its own evidence showing that it is in compliance with the net capital rule of the Commission." A hearing implies the existence of a contest in regard to the facts. While it is clear that where such a contest is present, the parties may not be denied a hearing on a motion for a preliminary injunction (Sims v. Greene, 3 Cir., 1947, 161 F.2d 87; United States v. Columbia Steel Co., D.C.Del.1947, 71 F.Supp. 734, defendant nowhere refutes the basic allegations upon which plaintiff bases its right. Where defendant bases his contention on the theory that the Commission's rules are not properly drawn, or seeks to substitute his own accounting procedures for those of the S.E.C., it is not sufficient for him simply to aver that he is in compliance with the rule as it should have been drawn. He must declare that he is in compliance with the rule as it stands and to show where the Commission errs. This defendant has nowhere done. The fact that he attacks the accounting procedures provided for by the rule makes it clear that he has no intention of doing so. Where, as here, questions of law only are raised the court may make its determination on the basis of the affidavits and the oral arguments of counsel; no hearing is necessary. Securities and Exchange Commission v. Shuck, D.C.S.D.N.Y. Civ. No. 112–267, September 6, 1957; Burlington Mills Corp. v. Roy Fabrics, D.C.S.D.N.Y., 91 F.Supp. 39, affirmed without opinion 2 Cir., 1950, 182 F.2d 1020.