F. & A. DISTRIBUTING COMPANY, A CORPORATION, AP-
PELLANT, v. DIVISION OF ALCOHOLIC BEVERAGE
CONTROL AND WILLIAM HOWE DAVIS, DIRECTOR,
RESPONDENTS.

Argued September 25, 1961—Decided November 6, 1961.

*Mr. Leo Yanoff* argued the cause for the appellant (*Messrs. Green & Yanoff,* attorneys; *Mr. H. Kermit Green,* of counsel; *Sylvia B. Pressler,* on the brief).

*Mr. Samuel B. Helfand* argued the cause for the respondents (*Mr. David D. Furman,* Attorney General of New Jersey, attorney; *Mr. David M. Satz, Jr.,* Assistant Attorney General, of counsel; *Mr. David S. Piltzer,* on the brief).

The opinion of the court was delivered by

FRANCIS, J. The Director of Alcoholic Beverage Control suspended the wholesale liquor license of F. & A. Distributing Company, a corporation, for 25 days. The action resulted from a finding that F. & A. had violated Rule 4(a) of Regulation 39 which prohibits sale and delivery of alcoholic beverages on credit to any retail licensee who, at the time of the sale, is on the Default List published by the Division.

An appeal from the order was taken to the Appellate Division of the Superior Court, but we certified it before argument there.

On February 23, 1945 the then Director of Alcoholic Beverage Control promulgated Regulation 39, Rule 4(a) of which now provides:

"No manufacturer or wholesaler shall sell or deliver any alcoholic beverages except for payment in cash on delivery to any retail licensee who is at the time of the delivery listed on the Default List."

The Default List is made up of retail licensees who have not made payments for their liquor purchases in accordance with certain rules also prescribed by the Director.

██ Extension of credit as an evil to be controlled in the business of selling intoxicating drink has long been a matter of public concern. See Act, February 24, 1797, *Paterson's Laws* 235. The Director issued Regulation 39 because of a belief that the granting of credit in the situation described would undermine an orderly market "within the trade itself" and would eventuate in public harm. There can be no reasonable doubt as to his authority in the matter. *R. S.* 33:1–23; 33:1–39. Appellant does not suggest the contrary.

In the administration of Rule 4(a) of Regulation 39, the Director adopted a policy under which, in the absence of aggravating circumstances and any violation of other rules or regulations, an offending wholesaler might be granted a "special permit." This designation implied that in such cases formal disciplinary proceedings would not be instituted; instead, the violator would be permitted to pay a monetary penalty in a sum fixed by the Director. That course was not followed in this case.

The record reveals also that on February 1, 1958, the Director notified the industry of a change in attitude

"regarding many so-called 'technical violations' of Regulations Nos. 34 and 39 * * * which in the past were the subject of warning letters or special permits in lieu of proceedings. In the future, aggravated violations of this kind * * * will be the subject of

disciplinary proceedings resulting in suspension or revocation of license or solicitor's permit where guilt is found." *Bulletin* 1207, *Item* 3.

 F. & A. is a wholesaler of alcoholic beverages. The evidence adduced in the Division shows conclusively that over a substantial period of time credit was granted for purchases made from F. & A. by two retailers who were on the Default List. The defense interposed in the disciplinary proceeding was that the credit was extended by the solicitor or salesman without the knowledge or authorization of any of its officers or supervisory personnel. There is no need to detail the proof on this aspect of the case. We agree that it was ample to put the credit manager on inquiry as to the salesman's method of operation. And we have no doubt that the slightest investigation would have disclosed the violation of Rule 4(a) to him. The Hearer, who saw and heard the witnesses, reported to the Director that: "It is difficult to believe that such improper tactics on the part of the solicitor employed by defendant took place over such a long period of time without anyone in authority having knowledge thereof." After reviewing the testimony, the Director approved the Hearer's report, saying, "at the least, the defendant's credit manager received such information that reasonably should have put him on notice that the Division's credit regulation probably was being violated."

 It is not necessary in situations like the present one to establish actual or constructive notice on the part of the licensee, or circumstances imputing notice to it on principles of *respondeat superior*, of violation of the regulation by an agent or employee. For reasons of public policy it has long been the law of this State that the licensee is responsible for such infraction regardless of notice; in fact, even if the offending conduct had been engaged in contrary to the licensee's instructions. *X-L Liquors, Inc. v. Taylor,* 17 *N. J.* 444, 450 (1955); *In re Olympic, Inc.,* 49 *N. J. Super.* 299, 305 (*App. Div.* 1958), certif. den. 27 *N. J.* 279; *Mazza v. Cavicchia,* 28 *N. J. Super.* 280, 284 (*App. Div.* 1953),

rev'd on other grounds 15 *N. J.* 498 (1954); and see *Beckanstin v. Liquor Control Commission,* 140 *Conn.* 185, 99 *A. 2d* 119 (*Sup. Ct. Err.* 1953).

 F. & A. contends further that the action of the Director in instituting disciplinary proceedings against it was discriminatory, and that the penalty of license suspension for 25 days was arbitrary, excessive and also discriminatory. More particularly, the claim is that the administrative policy to treat violations of Rule 4(a) as so-called special permit cases to be resolved by the imposition of a monetary penalty, rather than punishment in the form of loss or suspension of license, was capriciously departed from in the treatment of the transgression. Any such contention must be evaluated in the light of the well known and broad discretion possessed by the Director in the regulation of traffic in liquor. There is no doubt that arbitrary discrimination in the treatment of licensees similarly situated for the same regulation infraction, cannot be justified. But a conclusion of arbitrary discrimination cannot be drawn from the fact that the Director chose to follow one of two procedures in the handling of a particular case, or because he did not impose uniform penalties for the same type of violation where the penalty actually imposed is within the ambit of his authority, or simply because the penalty meted out seems to the offender to be more severe than that imposed in some other cases. It must be remembered that there is a strong presumption of validity of the administrative order. He who undertakes to impugn the action necessarily bears a heavy burden. That is particularly true where, as here, appellant frankly concedes that the Director's course does not represent personal animus or malice or overstepping of the statutory limits of authority with respect either to procedure or punishment. See *Butler Oak Tavern v. Division of Alcoholic Beverage Control,* 36 *N. J. Super.* 512 (*App. Div.* 1955), aff'd 20 *N. J.* 373 (1956).

In support of the claim of discrimination, appellant refers to a number of allegedly similar cases appearing in various Bulletins issued by the Division. They are said to indicate

arbitrariness in this prosecution because of the Director's refusal to follow the special permit rather than the strict or formal disciplinary procedure, and in suspending the license rather than assessing a monetary penalty. Some of the cases were cited in the Division hearing and additional ones were culled from the records and included in the Appendix in this court. Those called to the Director's attention he found to be dissimilar, warranting different treatment in respect to both procedure and penalty. No adequate showing to the contrary has been made to us. Other instances from the Bulletins (as distinguished from court proceedings) given to us are insufficient to demonstrate administrative error of the nature charged. In this connection limitations on our opportunity to compare situations must be kept in mind. When the entire record of Bulletin cases is not before us and has not been called to the Director's attention for purposes of comparison by him (where discrimination is alleged), it is practically impossible for this court on appeal to make an efficient evaluation of the criticism. See *In re Masiello,* 25 *N. J.* 590, 598–600 (1958). In any event, to the extent that such cases are described factually in the Bulletins, they do not, in our judgment, sustain the allegation of discrimination or excessive penalty.

In *Butler Oak Tavern v. Division of Alcoholic Beverage Control, supra,* a license revocation case, a similar charge was made of discrimination through failure to follow an established administrative pattern of treatment. Although the penalty meted out to the licensee appeared to be more severe than was usually given in such cases, this court found no justification for judicial intervention. The opinion observed that the Director is not absolutely bound by the doctrine of *stare decisis* and that liquor control laws must be administered in the light of changing conditions; that prior measures of enforcement may have fallen short of their mark, and that the penalty imposed may reflect an administrative attitude that more stringent enforcement is necessary. 20 *N. J.,* at *p.* 382. The late Justice Burling

referred to *Federal Communications Commission v. WOKO, Inc., 329 U. S. 223, 67 S. Ct. 213, 91 L. Ed. 204 (1946)*, for a comment which is also relevant to the present case:

"The mild measures to others and the apparently unannounced change of policy are considerations appropriate for the Commission in determining whether its action in this case is too drastic, but we cannot say that the Commission is bound by anything that appears before us to deal with all cases at all times as it has dealt with some that seem comparable." *329 U. S.*, at *pp.* 227, 228, 67 *S. Ct.*, at *p.* 215.

In the instance before us, the Director had previously warned that violations of Rule 4(a), which in his judgment were aggravated, would be treated more seriously in the future. Moreover, two of the Bulletin cases cited by F. & A. involved wholesaler license suspension. *Re Garden State Liquor Wholesalers, Inc., Bulletin* 1262, *Item* 1, and *Re Jersey National Liquor Company, Bulletin* 1262, *Item* 3. The former (occurring about six months before the announcement of possible sterner treatment for future aggravated violations) resulted in a suspension of 20 days, and the latter (a year after the announcement) of 30 days. Although the full factual record is not before us in either case, and so we do not know all of the circumstances or considerations which may have motivated the Director's order, what we do have indicates some analogy between *Garden State Liquor Wholesalers, Inc.* and the case at bar, and perhaps a more aggravated offense in *Re Jersey National Liquor Company*. But, as we have indicated, neither these cases nor any of the others relied upon would warrant a conclusion that appellant was the victim of an abuse of discretion or of discrimination because of the 25-day suspension.

The fact that F. & A. does a substantial business as a wholesaler and thus will suffer a heavy pecuniary loss, all of which was known to the Director, cannot be a controlling factor in our appraisal of his order. As the former Supreme Court said, in *Grant Lunch Corp. v. Driscoll, 129 N. J. L.* 408, 410–411 (1943):

"Although the sale was not accomplished in purposeful violation of the regulations it was such an act as would have been avoided had the prosecutor's clerks performed their duty; and in any event it was a flat violation of lawful regulations duly promulgated and fully grounded in the statute. Prosecutor does a large business. But it operates under a unit license and the fact that it does a large business, from which it presumably makes commensurate profits, is not a reason why, when it violates the law, it should not be punished by an interruption of the license by grace of which that business is done."

We find no basis for a determination of discrimination or of abuse of discretion by the Director in the manner of disposition of appellant's case, or for a finding of error on any of the other grounds urged.

The order of suspension is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.