SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,

v.

J. P. HOWELL & COMPANY, Inc.,
Michael LaMarca, Defendants.

Civ. A. No. 546-60.

United States District Court
D. New Jersey.

Dec. 18, 1962.

Judgment affirmed 330 F.2d 958.

Llewellyn P. Young, Regional Admin-
istrator, New York City, Charles Snow,
Jack Becker, for plaintiff.

Samuel R. Kesselman, Newark, N. J.,
Michael F. Parrino, of counsel, for de-
fendant.

COOLAHAN, District Judge:

This matter came before the Court for
trial, without a jury, wherein the plain-
tiff, Securities and Exchange Commis-
sion, sought a permanent injunction
against the defendants. After consider-
ing the evidence, the arguments of coun-
sel and the briefs filed on behalf of the
respective litigants, the Court makes the
following findings of fact based upon the
evidence submitted and conclusions of
law with respect to the application.

FINDINGS OF FACT.

1. The defendant, J. P. Howell & Co.,
Inc., is a corporation incorporated under
the laws of the State of New Jersey with
its principal office and place of business
at 20 Church Street, Montclair, New
Jersey. Since January 7, 1957 the de-
fendant has been and is now a registered
broker-dealer in securities, pursuant to

**700**

Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b).

2. The defendant, Michael LaMarca, has been and he is now the president, director, and directly and indirectly beneficial owner of ten (10%) per cent or more of the equity securities of said corporate defendant.

3. On June 13 and June 14, 1960, plaintiff, Securities and Exchange Commission, through the instrumentality of its agent, Raymond J. Wagner, caused an inspection to be made of the books and records of the defendant, J. P. Howell & Co., Inc., pursuant to the authority conferred upon it by Section 17(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78q(a).

4. In analyzing the trial balance of the defendant, J. P. Howell & Co., Inc., as of June 10, 1960, to ascertain whether said defendant was observing the rules, regulations and safeguards adopted by the Securities and Exchange Commission, pursuant to Section 15(c) (3) of the Securities Exchange Act of 1934, and Rule 17 CFR 240.15c3–1 promulgated thereunder to insure the financial responsibility of brokers and dealers, it was ascertained by an analysis of the aforementioned trial balance that the defendant's aggregate indebtedness was $21,-645.99; its required adjusted net capital was $1,082.30; resulting in a net capital deficit of $2,121.95; the prescribed addition to its net capital deficit in proprietary securities positions was $939.98; its adjusted net capital was a deficit of $3,061.93 and the additional capital required to be in compliance with the Rule was therefore $4,144.23.

5. In the course of this inspection the plaintiff's authorized representative ascertained further that on or about June 8, 1960 the defendant broker-dealer effected securities transactions with members of the public without advising such customers that the current assets of J. P. Howell & Co. were exceeded by its liabilities or failed to indicate to its customers what the financial condition of the broker-dealer was at the time of the securities transactions or at any other time.

6. That on June 27, 1960 the plaintiff's authorized representative received from the defendant a statement of its financial condition as of June 24, 1960. An analysis of this statement also indicated that additional capital in the sum of $282.32 would be required to be in compliance with the ratio limitation.

7. It was also established through the affidavits submitted and made part of this case that the J. P. Howell & Co., Inc., from the period of June 10, 1960 through June 24, 1960 made use of the mails or other means of instrumentalities of Interstate Commerce to effect transactions in, or to induce the purchase or sale of securities (other than an exempted security, commercial paper, bankers' acceptances or commercial bills) otherwise than on a national securities exchange.

8. At the trial of the issue one of the defendants, Michael W. LaMarca, the president of the defendant, J. P. Howell & Co., Inc., admitted that the defendant, J. P. Howell & Co., Inc. was in violation of the plaintiff's rules and regulations but alleged that such violation was inadvertent and not wilfully made. He further alleges that the company's noncompliance with the net capital rule did not in any respect cause any loss to any of its customers, nor did such noncompliance cause any undue risk of loss to its investors.

9. It is LaMarca's contention that when he took over the J. P. Howell & Co., Inc., on May 17, 1960 he gave to the corporation, through the instrumentality of his bookkeeper, some 600 shares of Sutton Leasing Corporation stock which had a market value of some $2,400.00. He states he instructed his bookkeeper and cashier to enter this stock on the company books. However, this entry was never made. He further alleges that on or about the time in question he possessed some 60 shares of A. T. & T. stock available to be included in the company's assets, and that the combined value of Sutton Leasing Corporation and

A. T. & T. stock amounted to $7,700.00, which, if added to the company's assets would bring the firm in compliance with the rule.

### CONCLUSIONS OF LAW.

1. Prior to the trial of this matter a preliminary injunction had been issued by Judge Smith, then of this Court, which included the following restrictions:

B. The corporate defendant, J. P. Howell & Company, Inc., has been and is now engaged as a broker-dealer in securities and as such broker-dealer during the period from approximately June 10, 1060 to the date hereof has been and is now making use of the mails and of the means and instrumentalities of Interstate Commerce and by such use has effected and is now effecting transactions in, and has been and is now inducing and attempting to induce the purchase and sale of securities (other than an exempted security or commercial paper, bankers' acceptances or commercial bills) otherwise than on a national securities exchange. By such use and during the period from approximately June 10, 1960 to June 24, 1960, the defendant has permitted its aggregate indebtedness to all other persons to exceed two thousand (2,000) per centum of its net capital in contravention of Rule 17 CFR 240.15c3-1.

C. A preliminary injunction pending the final determination of this action is necessary to enjoin the defendants, J. P. Howell & Company, Inc., and Michael LaMarca, their officers, agents, servants, employees, attorneys and assigns, and each of them, from making use of the mails or any means or instrumentalities of Interstate Commerce, while the said defendants are a broker and dealer in securities engaged in the business of effecting transactions for the accounts of others or for their own account, to effect any transaction in or to induce the purchase or sale of any security (commercial paper, bankers' acceptances or commercial bills) otherwise than on a national securities exchange, while and at a time when the defendant, J. P. Howell

& Company, Inc., is inducing others to purchase securities from it and to it and in connection therewith is soliciting and accepting the deposit of moneys and securities upon the representations that it is a broker-dealer ready and able to meet all liabilities arising in connection therewith, when, in fact, its liabilities do exceed its current assets and it is unable to meet its current liabilities.

D. The defendant, J. P. Howell & Company, Inc., has omitted to state the facts therein specified relating to its financial condition and assets and liabilities; and these facts have been and are now material and necessary in order to make the representations made, in the light of the circumstances under which they have been made and not misleading; and the omissions have been made with knowledge or reasonable grounds to believe that they are misleading.

E. Defendant, Michael LaMarca, as president and director of the corporate defendant, J. P. Howell & Company, Inc., aided, abetted, commanded, procured and induced the corporate defendant to conduct a business as a broker-dealer in securities by use of the United States mails and means and instrumentalities of Interstate Commerce during and at a time when the corporate defendant's liabilities exceeded its current assets and it failed to advise customers of its financial condition and while at a time when the corporate defendant's aggregate indebtedness to all other persons exceeded two thousand (2,000) per centum of its net capital.

2. It is the opinion of this Court that it has been established that the defendant, J. P. Howell & Company, Inc., on June 10, 1960 and June 24, 1960 had net capital deficiencies pursuant to the net capital rule and the fact that the defendant, Michael LaMarca, did not have actual knowledge as he asserted, or that any actions on his part or the part of J. P. Howell & Company, Inc., were wilful in this respect, is of no consequence for the defendant company and its president were chargeable with knowl-

edge of the financial condition existing at the times of the inspections.

 3. In order to establish the propriety of an issuance of injunctive relief in a case such as this, it is only necessary to show that the broker-dealer subjected its customers to undue financial risk by conducting its business in violation of the net capital rule. Blaise D'Antoni and Associates, Inc. v. Securities and Exchange Commission, 289 F.2d 276 (5th Cir. 1961); Hughes v. Securities and Exchange Commission, 85 U.S. App.D.C. 56, 174 F.2d 969, 974 (D.C. Cir. 1949).

Section 21(e) of the 1934 Act provides that an injunction will lie whenever it shall appear that any person engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this subchapter or any rule thereunder, and upon proper showing, a permanent injunction may be issued by the Court.

■ 4. With respect to the defendants' contention that they did not receive timely notice as to the violation, this Court finds and determines that the Commission is under no duty to inform a broker-dealer of the status of its financial condition. Securities and Exchange Commission v. Reiter, 146 F.Supp. 552, 555 (S.D.N.Y.1956).

The effect of an injunction is fully set forth in Securities and Exchange Commission v. Graye, 156 F.Supp. 544, 547 (S.D.N.Y.1957), Judge Irving R. Kaufman stated:

> "I fail to see any injury resulting to defendant by the granting of this injunction. As was stated in Securities and Exchange Commission v. Otis, D.C.Ohio, 1936, 18 F.Supp. 100, 101, affirmed Otis v. Securities and Exchange Commission, 6 Cir., 1939, 106 F.2d 579; 'If in fact defendant has no intention of again offending, it will not be injured by an injunction.' The injunction does not seek to put defendant out of business. It seeks only to restrain him from doing business while he is in violation of the S.E.C. rules. It does not seek to harm defendant, but rather to protect the public. Compliance will mean continuation."

I therefore find and determine that the defendants did violate the rule prescribed by the Securities and Exchange Commission and that an injunction will issue precluding the defendants from any further violation of the rule complained of.

The above will serve as findings of fact and conclusions of law under F.R.Civ.P. Rule 52(a).

Let an appropriate order be submitted.